IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| STATES OF CALIFORNIA, *et al.,* and | : | CIVIL ACTION |
| COMMONWEALTH OF MASSACHUSETTS, | : | NO. 16-843 |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| *Ex rel.* JOHN DOES, | : | |
| | : | |
| **Plaintiff-Relators,** | : | |
| | : | |
| v. | : | |
| | : | |
| SUN HEALTHCARE GROUP, INC., *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION**

**Goldberg, J.**                                                              **April 16, 2024**

This *qui tam* action raises allegations about the provision and quality of Medicare and Medicaid-reimbursed care at nursing homes owned and operated by: (1) Defendants Sun Healthcare Group; Sunbridge, Inc.; Sunbridge Healthcare LLC; Haborside Healthcare Corporation (collectively, the "Sun Defendants"); and/or (2) Defendants Genesis Healthcare, Inc; Genesis Healthcare, LLC; FC-GEN Operation Investment, LLC; Gen Operations I, LLC; Gen Operations II, LLC; Genesis Operations, LLC; Genesis Operations II, LLC; Genesis Operations III, LLC; Genesis Operations IV, LLC; Genesis Operations V, LLC; Genesis Operations VI, LLC, Genesis Holdings, LLC; GHS Holdings, LLC; and GHC Holdings II, LLC (collectively, "Genesis Defendants") (all Defendants collectively referred to as "Defendants"). After an approximately seven-year period of investigation, the Government and the affected States declined to intervene. Following those decisions, I ordered that the Amended Complaint be unsealed and served and that the seal be lifted as to all matters occurring after the date of that Order.

Relators now move to file a Second Amended Complaint. The Sun Defendants oppose that Motion and move separately to unseal all prior filings on the docket.

## I.        FACTUAL BACKGROUND

According to the Amended Complaint, this action was brought by John Doe Relators on behalf of the United States of America and twenty States to recover damages and civil penalties pursuant to the False Claims Act, 31 U.S.C. § 3729, and related state statutes, for tens of thousands allegedly false claims presented for payment or approval to Medicare or Medicaid.

The Amended Complaint alleges that Defendants pressured the nursing homes they owned and/or operated to increase occupancy rates and recruit heavy care residents, yet understaffed their nursing home or staffed them without regard to resident needs. The Amended Complaint asserts that Defendants knew that their admission and staffing policies resulted in poor or substandard care that harmed their residents. It is alleged that Defendants then continued to submit claims for care to federal and state Medicare and Medicaid program without providing the requisite care to nursing home residents.

The original sealed Complaint was filed on February 22, 2016, and an Amended Complaint was filed on November 20, 2018. The matter was originally assigned to the Honorable Jan DuBois and, on June 29, 2021, was reassigned to my docket. From the original filing date through July 17, 2023, extensions were granted on continued sealing and the evaluation period for the United States to determine whether it was going to intervene. Finally, on August 29, 2023, after the United States and State Plaintiffs indicated their lack of intent to intervene, I ordered that the Amended Complaint be unsealed and served on Defendants. The original Complaint and over forty other docket entries remain sealed.

## II.    RELATORS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

The first issue before me involves Relators' request to file a Second Amended Complaint. As noted above, this request is being made five years after the previous amendment.

Under the Federal Rules of Civil Procedure:

> A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). All further amendments require the other party's consent or the leave of the court. Rule 15(a)(2).

Rule 15 sets forth a liberal approach to pleading and "[t]he court should freely give leave when justice so requires." Id.; see also Spartan Concrete Prods., LLC v. Argos USVI, Corp., 929 F.3d 107, 115 (3d Cir. 2019). "The policy favoring liberal amendments of pleadings is not, however, unbounded." Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990).

The decision whether to grant or to deny a motion for leave to amend rests within the sound discretion of the district court. Foman v. Davis, 371 U.S. 178, 182 (1962); Waterfront Renaissance Assoc. v. Phila., 701 F. Supp. 2d 633, 639 (E.D. Pa. 2010). A district court may deny leave to amend a complaint where "it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000) (citing Foman, 371 U.S. at 182–83). Ultimately, "prejudice to the non-moving party is the touchstone for the denial of an amendment." Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) (quotations omitted). "Given the liberal standard of Rule 15(a), the party opposing amendment bears the burden of showing undue delay, bad faith, prejudice or futility." Kang

_Haggerty & Fetbroyt, LLC v. Hayes_, No. 17-1295, 2018 WL 2461898, at \*2 (E.D. Pa. June 1, 2018).

Here, the Sun Defendants oppose the Motion for Leave to Amend on the grounds of undue delay. "The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay. In fact, delay alone is an insufficient ground to deny leave to amend." _Cureton v. Nat'l Collegiate Athletic Ass'n_, 252 F.3d 267, 273 (3d Cir. 2001) (internal citations omitted). At some point, however, "the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." _Adams v. Gould_, 739 F.2d 858, 868 (3d Cir. 1984). "Delay may become undue when a movant has had previous opportunities to amend a complaint." _Cureton_, 252 F.3d at 273. "Implicit in the concept of 'undue delay' is the premise that Plaintiffs, in the exercise of due diligence, could have sought relief from the court earlier." _In re Pressure Sensitive Labelstock Antitrust Litig._, No. 03–mdl-1556, 2006 WL 433891, at \*1 (M.D. Pa. Feb. 21, 2006). Thus, although the Federal Rules have a liberal amendment policy, "the question of undue delay requires that we focus on the movant's reasons for not amending sooner." _Cureton_, 252 F.3d at 273. "Tactical decisions and dilatory motives may lead to a finding of undue delay." _Leary v. Nwosu_, No. 05-cv-5769, 2007 WL 2892641, at \*4 (E.D.Pa. Oct. 2, 2007). Notably, "[t]here is no presumptive period in which a motion for leave to amend is deemed 'timely' or in which delay becomes 'undue,'" rather it depends on the facts and circumstances of the case. _Arthur_, 434 F.3d at 205; _see also_ _Nat'l Recovery Agency, Inc. v. AIG Domestic Claims, Inc._, No. 05-cv-0033, 2006 WL 1289545, at \*4 (M.D. Pa. May 9, 2006).

When delay is undue, the court must then determine whether there will be substantial or undue prejudice to the non-moving party. This requires the court to "focus on the hardship to the

defendants if the amendment were permitted." Cureton, 252 F.3d at 273. More specifically, a court must consider whether an amendment would result in "additional discovery, cost, and preparation to defend against new facts or theories." Id. Ultimately, "the obligation of the trial court in its disposition of the motion is to articulate the imposition or prejudice caused by the delay, and to balance those concerns against the movant's reasons for delay." Coventry v. U.S. Steel Corp., 856 F.2d 514, 520 (3d Cir. 1988).

I find that Relators have engaged in unwarranted delay in seeking to amend their complaint. Relators filed their original complaint over eight years ago, in February of 2016, at which time the case was placed under seal. More than two and a half years later, in November 2018, after numerous sealing extensions, Relators filed their amended complaint. The case then continued under seal for almost five more years, until August 29, 2023, when I ordered that the Amended Complaint be unsealed and served upon Defendants. Only after that unsealing did Relators seek to file a Second Amended Complaint—more than seven and a half years after the initiation of this lawsuit.

Despite this delay, Relators have offered little to no explanation for their failure to amend earlier. Relators' Motion attaches a copy of a ninety-four page proposed Second Amended Complaint, along with fifty attached exhibits, and then posits that leave is necessary "in order to make their allegations as clear as possible without making substantial changes to those claims or the facts alleged." (Relators' Mot. for Leave to Amend 1–2.) Without expounding on why they could not have made these amendments at any point during the seven and a half years that the case remained under seal, Relators simply contend that there is no suggestion that they acted in bad faith or with undue delay, or that amendment is futile.

Nonetheless, as noted above, delay alone is an insufficient basis for denying leave to

amend, and the Sun Defendants have not established that they will suffer undue prejudice by the proposed amendments. "Generally, prejudice includes 'the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party.'" Briscoe v. Klaus, 538 F.3d 252, 259 (3d Cir. 2008) (quoting Adams v. Trustees of NJ Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873–74 (3d Cir. 1994)). Prejudice also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Id. (quoting Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003)).

Here, the Sun Defendants assert that the proposed changes are substantive and their delayed filing will result in undue prejudice. The only prejudice the Sun Defendants can identify, however, is prejudice resulting from the extended seal period. For example, they argue:

- "If SunBridge had been put on notice of this action during the prior seven-and-a-half years, they could have sought leave to preserve the testimony of [Relator Barbara] Roberts before her death." (Defs.' Opp. Mot. to Amend 12.)

- "Relators' allegations relate to resident care at nursing homes dating back to 2008, but with Sunbridge never on notice of those allegations until the FAC was unsealed in 2023. The result of the Government's delay is that documents, witnesses, and other materials that could be identified and used to affirmatively disprove Relators' baseless allegations may no longer exist or may no longer be viable sources of information." (Id.)

- "Indeed, because the allegations here involve nursing home patient care, there is a very real likelihood that many witnesses may now (i) be unavailable through death or disability . . . or (ii) have faded memories simply due to the passage of time (such as clinicians who have since treated countless other patients." (Id.)

These allegations focus not on the prejudice that may result from the filing of a second amended complaint but rather on the entirely separate issue of the prejudice resulting from the Government's delay in evaluation and extension of the seal period. Notably, the Sun Defendants do not identify—and I cannot discern—any specific prejudice they would face as a result of the

6

proposed amendment.  Indeed, because this is a *qui tam* action, the Sun Defendants were not served

with the operative Amended Complaint, and thus did not learn of the allegations against them,

until September 2023.  Approximately, one month later, Relators sought to file the proposed

Second Amended Complaint to ensure that the operative pleading is clear, to identify all Relators

by name instead of as John Does, and to substitute in the estate of Relator Barbara Roberts, who

passed away during the seal period.  The Sun Defendants point to nothing in the proposed Second

Amended Complaint that changes the central theory and facts underlying the case or otherwise

alters the parties' burdens.  Accordingly, I will grant leave to amend.

## III.    THE SUN DEFENDANTS' MOTION TO UNSEAL

The Sun Defendants move to unseal the forty-two docket entries that span the February 22,

2016 case opening to the August 29, 2023 unsealing Order.  They contend that the judicial

presumption in favor of public access and their need to review these documents for purposes of

mounting a defense warrant full unsealing.  In response, the United States agrees to the unsealing

of twenty-six of those documents but seeks to keep the remaining fifteen documents under seal.

Thus, at issue in this Motion is the unsealing of: (1) eleven briefs supporting the United States'

motions for extension of the seal and evaluation period; (2) two applications for limited disclosure;

and (3) a motion and order related to reassignment of this case and other under-seal *qui tam* actions

against different defendants to a single judge for coordinated treatment during the case evaluation

periods.[1]

The question of whether documents should remain sealed in an FCA case "is a matter for

the court's exercise of discretion."  United States ex rel. Brasher v. Pentec Health, Inc., 338 F.

Supp. 3d 396, 401 (E.D. Pa. 2018).  The United States Court of Appeals for the Third Circuit has

---

[1]      These documents include docket numbers 2, 3, 5, 7, 9, 11, 15, 17, 19, 21, 23, 26, 29, 31, and 34.

set forth "three distinct standards when considering various challenges to the confidentiality of documents." In re Avandia Mktg., Sales Practices and Prods. Liab. Litig., 924 F.3d 662, 670 (3d Cir. 2019).   To review orders preserving the confidentiality of discovery materials that are exchanged between the parties, a court must apply the factors articulated in Pansy v. Borough of Stroudsburg, 23 F.3d 772, 783–92 (3d Cir. 1994).  Id.  When those discovery materials are filed as court documents, the court must apply the more rigorous common law right of access, which "begins with a presumption in favor of public access." Id.  Finally, "the First Amendment right of public access attaches to, *inter alia*, civil trials."

The second standard—which applies to the disputed documents here—is premised on the common law presumption that the public has a right of access to judicial materials.  Id. at 672. The right of access "promotes public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court." Littlejohn v. BIC Corp., 851 F.2d 673, 678 (3d Cir. 1988). Public observation facilitated by the right of access "diminishes possibilities for injustice, incompetence, perjury, and fraud." Id.  Moreover, "the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness." Id.  "[T]here is a presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith." Avandia, 924 F.3d at 672 (quotation omitted).

Yet the common law right of access is "not absolute."  Id. (quotation omitted).  "The presumption [of access] is just that, and thus may be rebutted." Id. (quotation omitted).  "The party seeking to overcome the presumption of access bears the burden of showing 'that the interest in secrecy outweighs the presumption.'" Id.  To overcome that strong presumption, the District Court must articulate "the compelling, countervailing interests to be protected," make "specific findings

on the record concerning the effects of disclosure," and "provide[ ] an opportunity for interested third parties to be heard." In re Cendant Corp., 260 F.3d 183, 194 (3d Cir. 2001) (quotation omitted).  The movant must show "that the material is the kind of information that courts will protect and that disclosure will work a clearly defined and serious injury to the party seeking closure." Miller v. Ind. Hosp., 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted).

"In delineating the injury to be prevented, specificity is essential." Fitzpatrick v. Freightliner, LLC, No. 05-cv-2415, 2007 WL 626160, at *1 (M.D. Pa. Feb. 26, 2007).  "Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." Id. "[C]areful factfinding and balancing of competing interests is required before the strong presumption of openness can be overcome by the secrecy interests of private litigants." Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 167 (3d Cir. 1993). To that end, the District Court must "conduct[ ] a document-by-document review" of the contents of the challenged documents." Id.

"Within the FCA context, an overwhelming number of district courts apply a balancing test that is unique to unsealing documents in *qui tam* actions—balancing the harm of disclosure with the movant's need for the information." La Frontera Center, Inc. v. United Behavioral Health, Inc., No. 15-cv-1164, 2023 WL 6443560, at *8 (D.N.M. Oct. 3, 2023) (citing authority across circuits).  "Where the harm of unsealing outweighs the need for the documents, courts will deny the request for lifting the seal." Id. (quotation omitted); see also Purcell v. Gilead Sciences, Inc., 415 F. Supp.3d 569, 578 (E.D. Pa. 2019) (adopting this test).  Nonetheless, this balancing test must still be applied against the backdrop of the presumption of access to public records.

Although the Third Circuit has not provided any specific guidance as to requests to unseal government extension requests in an FCA case, courts have "in general, lifted the seal on the entire

record except for specific documents that: '(1) reveal confidential investigative methods or techniques; (2) jeopardize an ongoing investigation; or (3) harm non-parties." U.S. ex rel. Brasher v. Pentec Health, Inc., 338 F. Supp. 3d 396, 401–02 (E.D. Pa. 2018) (quotation omitted); see also Purcell v. Gilead Sciences, 415 F. Supp. 3d 569 (E.D. Pa. 2019).  Investigative methods or techniques are not protected where they are only "routine investigative procedures which anyone with rudimentary knowledge of investigative processes would assume would be utilized in the regular course of business . . . [and] contain no information about specific techniques such as what items might be looked for in an audit, what types of employees of an entity should be contacted and how, what laboratory tests might be utilized, or the like." U.S. ex rel. Heath Outcome Techs. v. Hallmark Health Sys., Inc., 349 F. Supp. 2d 170, 173–74 (D. Mass. 2004) (alteration in original) (quoting U.S. ex rel. Mikes v. Straus, 846 F. Supp. 21, 23 (S.D.N.Y. 1994)); see also United States v. Amador, No. 20-cv-1840, 2022 WL 594548, at *2 (D. Nev. Feb. 25, 2022) (lifting seal on extension requests where there was no sensitive information that would compromise future investigation and where the government had not provided compelling reasons to maintain the secrecy of their investigatory steps); United States v. Aurora Diagnostics, Inc., No. 16-cv-21338, 2017 WL 8781118, at *2 (S.D. Fla. Aug. 30, 2017) (declining to maintain seal on "routine applications for enlargements of time" and orders from the court where the documents "discuss ministerial discovery matters like the number of documents collected, the issuance of a civil investigative demand, and the existence of an interview with the Relator."); U.S. ex rel. Yannacopolous v. Gen. Dynamics, 457 F. Supp. 2d 854, 858 (N.D. Ill. 2006) (rejecting request to maintain seal over extension requests that reveal "only routine investigative procedures which anyone with rudimentary knowledge of investigative processes would assume would be utilized").

Here, the Government argues that in its multiple motions for extensions of the seal, it was obligated by 31 U.S.C. § 3730(b)(3) to demonstrate good cause. To do so, it had to reveal, at least to some degree, the details and progress of its investigations to the Court. Thus, it claims the motions informed the Court of the actions taken or anticipated in furtherance of the Government's investigations, the progress made, and the identification of the Government agencies and personnel involved. In addition, the Government contends that other submissions—such as requests for authority to disclose the complaint to others, to reassign cases for coordinated evaluation-period treatment, or to mark cases as related—called for candid disclosures to the Court about the status of the Government's investigations and the relationships of various matters under seal. According to the Government, the extension memoranda reference other investigations and matters that were under seal, one of which remains fully under seal. The Government goes on to argue that the extension requests, applications for limited disclosure, and reassignment motion were filed under seal with the intention that they would never be disclosed as judicial records or public filings and that the duty of protecting the United States' investigatory processes must outweigh any public interest in the details of the government's filings. Finally, the Government posits that unsealing of the pre-March 20, 2023 submissions would have a chilling effect on the future preparation of such submissions.

Having reviewed each of the fifteen identified documents on which the Government seeks to maintain the seal, I do not find that the Government has met its burden of articulating compelling, countervailing interests to be protected. The documents consist of: (1) a motion by the Government to reassign the case and an accompanying order granting that motion; (2) two applications of the Government for limited disclosure of the Complaint or Amended Complaint; and (3) eleven motions for extension of the seal and evaluation period. On their face, the unsealing

of these documents does not appear to reveal confidential investigative methods or techniques, jeopardize any ongoing investigations, or harm non-parties.   For the most part, the investigative discussions involve ministerial discovery matters or routine investigations that anyone with rudimentary knowledge of the process would expect to be followed.  Indeed, the Government itself concedes "this case did not involve the most highly sensitive investigative techniques." (ECF No. 79 at 10.)   While the Government asserts that such disclosures could have a chilling effect on future preparation of such submissions, such "broad allegations of harm, bereft of specific examples or articulated reasoning" do not overcome the strong presumption of access to public records.  Fitzpatrick, 2007 WL 626160, at *1.

Nonetheless, while I find that the blanket seal on these documents should be lifted, I remain cognizant that there may be sensitive information in the documents that could be redacted in such a way that (a) public access is preserved and (b) Defendants are given the requisite information to defend themselves against the allegations in this case.  Specifically, the Government has stressed that some of the related actions mentioned therein remain under seal and the investigations in those cases could be impacted by disclosures.  I also note that the Government may be able to articulate specific pieces of investigatory information that should be redacted from the documents.

To that end, I will grant Defendants' Motion to Unseal as to the entire docket but will stay the lifting of the seal on the fifteen documents at issue (Docket Nos. 2, 3, 5, 7, 9, 11, 15, 17, 19, 21, 23, 26, 29, 31, and 34) for a period of sixty days.  Within thirty days from the date of my Order, the Government will be required to identify, with specificity, the precise information on those fifteen documents that it wishes to redact and shall explain why those requested redactions should overcome the presumption in favor of public access.

An appropriate Order follows.

12